UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TED BONIECKI,

      Plaintiff,

v.                                                     Civil Case No. 22-11578
                                                   Honorable Linda V. Parker

CITY OF WARREN,

      Defendant.
_____/

**OPINION AND ORDER ON PENDING MOTIONS
AND SHOW CAUSE ORDER**

On July 12, 2022, Plaintiff Ted Boniecki ("Boniecki") filed this pro se action against the City of Warren ("Warren"). In his Complaint, Boniecki alleges several constitutional violations arising from Warren's purported threat of warrantless searches and criminal prosecution if rental inspections and permits are not obtained for three Warren properties: 28127 Wexford, 4335 Burssens, and 28041 Walker. Boniecki has filed two motions for injunctive relief. (ECF Nos. 7, 24.) Warren has filed two motions to dismiss (ECF Nos. 9, 28), a motion to compel discovery responses from Boniecki (ECF No. 25), and a motion for substitute service to serve subpoenas on two non-parties (ECF No. 26).

**Warren's Motions to Dismiss**

The primary arguments raised in Warren's dispositive motions are premised on its assertion that the three properties at issue are owned by the Boniecki Family Trust 28041 (hereafter "Trust"), not Boniecki. (ECF No. 28 at Pg ID 224.) Boniecki acknowledges that this is correct but asserts that he is the trustee for the Trust. (*See, e.g.*, ECF No. 13 at Pg ID 74.) In its first motion, Warren argues that the action therefore should be dismissed because Boniecki fails to name an indispensable entity, that being "the owners of the property[.]" (ECF No. 9.) In its second motion, Warren argues that Boniecki therefore lacks standing and the Court lacks subject matter jurisdiction. (ECF No. 28.) Warren also argues that there has been no Fourth Amendment violation. (*Id.*)

Warren does little to aid the Court in addressing its arguments. As an initial matter, its first-filed motion violates several of the District's local rules. For example, the filing lacks a statement regarding concurrence, is not accompanied by a separate brief, and fails to provide a concise statement of the issues presented or the controlling authority. *See* E.D. Mich. LR 7.1. Warren indicates that the motion is filed pursuant to two Michigan Court Rules—albeit rules that do not exist—presumably intending to cite the Federal Rules of Civil Procedure which are the correct rules governing this federal court action. *See* Fed. R. Civ. P. 1. In this

2

two-page filing (which includes the case caption, a block quotation from Rule 19, and the signature block), Warren does not cite a single case to support that a necessary party has not been joined. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quotation marks, citations, and ellipsis removed). For these reasons, the Court is denying Warren's first dispositive motion.

Warren's second motion fares only slightly better. Warren provides a statement of concurrence, a separate brief, and cites to the correct jurisdiction's procedural rules. (ECF No. 28.) However, Warren does not cite a single case to support its argument that Boniecki lacks standing. The case law cited stands only for general principles, such as the elements to establish standing and the standard for reviewing Rule 12(b)(1) motions. (*See id.* at Pg ID 228.) Warren maintains that Boniecki "has shown no proof of ownership or any real estate in Warren" but fails to elaborate on how that connects with the injury in fact required to satisfy Article III. Again, it is not the Court's responsibility "to put flesh on [the] bones" of a party's legal arguments. *See McPherson*.

3

Nevertheless, because standing is a necessary component of subject matter jurisdiction, to move forward, this Court must satisfy itself that this requirement is satisfied. *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (citation omitted). "To satisfy Article III's standing requirements, a plaintiff must show: '(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Cleveland Branch NAACP v. City of Parma*, 263 F.3d 513, 523-24 (6th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000))). "[S]tanding in no way depends upon the merits of the plaintiff's contention that the particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *see also Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 407 (6th Cir. 2019) (quoting *Warth*, 422 U.S. at 502) ("Our standing analysis does not consider the merits of Plaintiffs' claims; instead, we must assume that 'if proved in a proper case,' Defendants' alleged practices 'would be adjudged violative of the Plaintiffs' constitutional rights.'").

Construing Boniecki's filings liberally, as this Court must, *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519,

4

520 (1972)), he appears to be bringing this suit on behalf of himself, personally, and as trustee of the Trust. Boniecki does lack standing to bring this pro se action on behalf of the Trust, although for slightly different reasons than Warren asserts. However, the Court finds that he has personal standing.

Federal law provides that federal court cases may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. Section 1654 states: "In all courts of the United States, the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively are permitted to manage and conduct causes therein." The federal courts have long held that the statute preserves a party's right to proceed pro se, but only on the party's own claims; only a licensed attorney may represent other persons or artificial entities. *See Rowland v. Calif. Men's Colony*, 506 U.S. 194, 202 (1993); *Shepherd v. Wellman*, 313 F.3d 963, 970-71 (6th Cir. 2003).

In other words, artificial entities may appear in federal court only through licensed counsel and not through pro se representation of an officer, agent, or shareholder. *Rowland*, 506 U.S. at 202; *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 603 (6th Cir. 2005); *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984). Circuit courts, including the Sixth Circuit, consider this issue to be one of standing. *See, e.g., Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1299 (10th Cir.

5

2011) (collecting cases); *Oliver v. Pogats*, No. 91-1717, 1992 WL 76951, at *1 (6th Cir. 1992) (unpublished). This rule is applicable to trusts, which are also artificial entities. *Knoefler v. United Bank of Bismarck*, 20 F.3d 347, 348 (8th Cir. 1994) (holding that the plaintiff-trustee lacked standing as a pro se litigant to prosecute claims on behalf of the trust); *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) (quoting 28 U.S.C. § 1654) (concluding that "[b]ecause [the plaintiff] is not the actual beneficial owner of the claims being asserted by the Trusts . . ., he cannot be viewed as a 'party' conducting his 'own case personally' within the meaning of Section 1654. He may not claim that his status as trustee includes the right to present arguments pro se in federal court") (emphasis in original); *Marin v. Leslie*, 337 F. App'x 217, 219-20 (3d Cir. 2009) (unpublished) (upholding the dismissal of a pro se plaintiff's claims on behalf of a trust, as he could not pursue the claims pro se); *DiMercurio v. CIR*, No. 08-1378, 2008 WL 5784519 (6th Cir. 2008) (unpublished) (holding that the plaintiff-trustee, a non-attorney, "has no right to represent a trust in federal court"); *William Huron Gardens 397 Tr. v. Twp. of Waterford*, No. 18-12319, 2019 WL 2051967, at *3 (E.D. Mich. Feb. 28, 2019) (unpublished) (collecting cases holding that a trustee, proceeding pro se, cannot represent a trust in federal court), *adopted in* 2019 WL 1324242 (E.D. Mich. Mar. 25, 2019).

6

Boniecki, however, also alleges injuries to himself, personally. Specifically, Boniecki claims that by preventing the Trust from renting the properties, Warren's actions deprive him of rental proceeds, presumably as a beneficiary of the Trust. (*See, e.g.*, ECF No. 13 at Pg ID 74-75.) The Court finds this sufficient to confer standing on Boniecki. *See Anderson v. Old Nat'l Bancorp*, No. 5:02-cv-324, 2009 WL 2422324, at *3 (W.D. Ky. 2009) (unpublished) (explaining that the plaintiffs' assertion that the defendants' actions damaged the plaintiffs through income payments they would have received as beneficiaries under the trusts alleged a "concrete and particularized" harm to the plaintiffs directly traceable to the defendants' alleged misconduct).

In addition to its standing argument, Warren also makes a "lack of Fourth Amendment search requirement" argument in its second motion to dismiss. (*See* ECF No. 28 at Pg ID 229 (capitalization removed).) However, in support of this argument, Warren asserts facts and offers materials outside the pleadings (*see, e.g.*, ECF No. 28 at Pg ID 229), which cannot be considered in evaluating Plaintiff's claims under Federal Rule of Civil Procedure 12(c), *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (indicating that the court must accept the factual allegations in the complaint as true when deciding a Rule 12 motion to dismiss for failure to state a claim); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond*

7

*v. Baldwin*, 886 F.2d 172, 175 (6th Cir. 1989)) (providing that a court generally may not consider matters outside the pleadings when deciding such a motion). Warren seems to be arguing that its ordinances provide for pre-compliance review and therefore are not unconstitutional. Yet, Warren never points the Court to any specific ordinance or quotes language from any ordinance providing for such review. And Warren waits until its concluding paragraph, under the heading "relief requested," to briefly mention that its "[r]ental [o]rdinance has already passed muster"—citing but not providing the Court with a copy of an unpublished 2017 decision by another judge in this district.[1] (ECF No. 28 at Pg ID 232 (citing Op. & Order, *NILI 2011, LLC v. Warren*, No. 15-cv-13392 (E.D. Mich. Nov. 14, 2017), ECF No. 64).) Lastly, Warren fails to articulate why Boniecki's remaining constitutional claims fail to state a claim upon which relief may be granted.

---

[1] This 2017 decision addressed a different version of Warren's ordinances than the version at issue here, most noticeably in that it adopted a different version of the International Property Maintenance Code ("IPMC"). *Compare* Op. & Order, *NILI 2011*, No. 15-13392, ECF No. 64 at 1710 n. 1 (indicating that the City has been enforcing the 2009 version of the IPMC) *with* Code of Ordinances of the City of Warren, Michigan § 29-1 (adopted Mar. 22, 2022) (adopting the 2018 IPMC). Perhaps more significantly, in the cited decision, the district court did not find Warren's rental ordinances constitutional. *See* Op. & Order, *NILI 2011*, No. 15-1339, ECF No. 64. In fact, the court denied summary judgment to Warren with respect to the plaintiff's Fourth Amendment claim. *See id*. at Pg ID 1726-30.

8

As this Court reads Boniecki's pro se pleading, he alleges: (1) Fourth Amendment violations based on unlawful searches; (2) a violation of his protected property rights; (3) a violation of the First Amendment right to the freedom of assembly; (4) procedural due process violations under the Fifth and Fourteenth Amendments; (5) equal protection violations; and (6) a Fourteenth Amendment "shocks the conscience" claim. (*See generally* ECF No. 1.) It may be that all of these "claims" are dependent upon the correctness of Boniecki's contention that Warren unlawfully requires owners of rental property to obtain rental licenses and submit to warrantless—and, as discussed below, the Court believes they mostly do. Yet, again, Warren has left it for the Court to figure this out on its own.

For these reasons, the Court also is denying Warren's second dispositive motion.

## Sua Sponte Dismissal

Nevertheless, under Sixth Circuit precedent, a district court may sua sponte dismiss a complaint for failure to state a claim upon which relief may be granted provided it:

> (1) allow[s] service of the complaint upon the defendant; (2) notif[ies] all parties of its intent to dismiss the complaint; (3) give[s] the plaintiff a chance to either amend his complaint or respond to the reasons stated by the district court in its notice of intended sua sponte dismissal; (4) give[s] the defendant a chance to

9

> respond or file an answer or motions; and (5) if the claim is dismissed, state[s] its reasons for the dismissal.

*Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 396 (6th Cir. 2015) (unpublished) (quoting *Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir. 1983)). Warren was served with Boniecki's Complaint, filed an Answer, and filed motions. The Court hereby gives the parties notice of its intent to dismiss the claims in Boniecki's Complaint and sets forth the reasons why, below. The Court will give Boniecki a chance to respond to the reasons stated and to propose amendments to his pleading to save his claims.

The "Property Maintenance" chapter of the Code of Ordinances of the City of Warren, Michigan (hereafter "Ordinances") adopts and incorporates the 2018 International Property Maintenance Code ("IPMC"), except as noted throughout the chapter. Ordinances § 28-1. Article II of the Ordinances, titled "Licensing of Rental Dwellings," states, as its purpose: "to ensure that the residential rental structures and multi-family units located within the city comply with minimum standards for the public health, safety and welfare." *Id.* § 28-10. To this end, the Ordinances require an owner of residential property to obtain a license before renting the property or a dwelling unit within the property. *Id*. § 28-13(a). Rental licenses are valid for two years unless terminated automatically upon the transfer of ownership. *Id.* § 28-13(d).

10

An inspection is required to obtain a rental license to ensure compliance with the requirements of the IPMC. *Id.* §§ 28-13(c)(2), 28-20(b). Additional inspections are permitted upon written complaint for which probable cause is found, whenever a code official has reasonable cause to believe that a violation of the ordinance or other conditions renders the premises unsafe, dangerous, or hazardous, or for reinspection to ensure violations found in a previous inspection were corrected. *Id.* § 28-20(d).

The procedure for gaining access to inspect rental units is set forth in section 28-20, which provides in relevant part:

> The code official shall be granted access by the owner or occupant of the rental dwelling or rental dwelling unit to enter the dwelling or unit during business hours for the purpose of conducting a compliance inspection. *If any owner or occupant refuses to provide access* to the premises for a compliance inspection, the code official may seek a warrant from the 37th District Court to obtain entry to the premises.

*Id.* § 28-20 (emphasis added). Section 28-2(h) also provides that inspections of residential rental premises must comply with Michigan Compiled Laws Section 125.526, which does not permit warrantless searches of property absent consent or an emergency. *Id.*; Mich. Comp. Laws § 125.526(6)-(11). Where an owner or occupant demands a warrant for inspection, Michigan law, like Warren, requires

11

municipal officials to obtain a warrant "from a court of competent jurisdiction." Mich. Comp. Laws § 125.527(1).

Owners or occupants who fail to comply with the Ordinances' requirements are subject to the warning and citation procedures and penalties outlined therein. Ordinances § 28-2(j). If Warren believes a violation exists, a notice of inspection must be posted on the premises informing the owner that an inspection shall be conducted pursuant to sections 104.2 and 104.3 of the IPMC. *Id*. § 28-2(i). Section 28-2 states: "Before issuing a citation, the code enforcement officer or inspector shall comply with the warning notice procedure described in section 107 of the [IPMC]." *Id.* 28-2(j).

Section 107 of the IPMC sets forth the required form for warning notices:

1. Be in writing.

2. Include a description of the real estate sufficient for identification.

3. Include a statement of the violation or violations and why the notice is being issued.

4. Include a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of this code.

5. Inform the property owner or owner's authorized agent of the right to appeal.

12

> 6. Include a statement of the right to file a lien in accordance with Section 106.3.

IMPC § 107; *see also* Ordinances § 28-2(k). The form of citations also is proscribed and requires *inter alia* notice to the owner that a hearing date will be scheduled and of their right to appeal an adverse decision at the hearing to the Macomb County Circuit Court. IMPC §§ 106.2, 107.2; Ordinances § 28-2(j). Penalties, which are civil blight violations unless specified as misdemeanors in the Ordinances, are issued after a hearing, as are the applicable fines, which are established in a schedule adopted by the City Council. Ordinances § 28-2(j).

Almost all of the claims alleged in Boniecki's Complaint are rooted in his belief that Warren unlawfully requires licenses and warrantless searches as a condition of renting residential property within the municipality. However, on its face, the Ordinances do no such thing. Instead, if consent for an inspection is refused, officials must seek a warrant from Michigan's 37th District Court. *See* Ordinances §§ 28-2(h), 28-20(a). In other words, from a judicial officer. Where a city ordinance provides the opportunity for pre-compliance review before yielding to an inspection and contains an express warrant procedure, courts find the ordinance constitutional. *See City of Los Angeles v. Patel*, 576 U.S. 409, 420 (2015) (explaining that "in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance

13

review before a neutral decisionmaker"); *Hometown Co-Op Apartments v. City of Hometown*, 515 F. Supp. 502, 503 (N.D. Ill 1981) ("By providing for a warrant procedure in cases in which a new owner or lessee of property refuses to consent to an inspection by the building department, the City of Hometown has remedied the fatal flaw in its earlier point of sale inspection ordinance. The property owner is no longer forced to choose between consenting to a warrantless search or subjecting himself or herself to substantial fines for failure to procure a certificate of inspection"); *Williams v. City of Jackson*, No. 21-10749, 2022 WL 6601298, at *3 (E.D. Mich. Jan. 4, 2022), *adopted in* 2022 WL 4378688 (E.D. Mich. Sept. 22, 2022) ("Jackson's ordinance complies with the Fourth Amendment by requiring enforcing agents to 'obtain a warrant from a court of competent jurisdiction' before entering property without the owner's consent.").

Plaintiff does not allege facts plausibly suggesting that Defendants engaged in a warrantless search of the properties. Instead, he asserts that tickets have been issued and fines imposed and/or threatened due to the failure to obtain rental licenses and undergo the related necessary inspections for the properties at issue. There is nothing unlawful in Warren doing so.

Undoubtedly, the Ordinances require owners of property in Warren, before renting the property, to obtain a rental license demonstrating the property's

14

"compl[iance] with minimum standards for the public health, safety and welfare."[2] Ordinances §§ 28-10, 28-13(a). Clearly the only means for City officials to determine whether a license should issue is through an inspection. *See Camara v. Mun. Ct. of City and Cnty. of San Francisco*, 387 U.S. 523, 535-36 (1967) (recognizing the necessity of "routine periodic inspections of all structures" to "effective[ly] . . . seek universal compliance with the minimum standards required by municipal codes" as many conditions "are not observable outside the building and may not be apparent to the inexpert occupant himself"). As the district court found in *Halpern 2012, LLC v. City of Center Line*, 404 F. Supp. 3d 1109 (E.D. Mich. 2019), "there is nothing wrong with that. 'It is beyond all dispute that local municipalities are empowered to regulate land use in order to maintain or improve the quality of life within their communities.'" *Id*. at 1119 (brackets omitted) (quoting *15192 Thirteen Mile Rd., Inc. v. City of Warren*, 626 F. Supp. 803, 823 (E.D. Mich. 1985)), *aff'd* 806 F. App'x 390 (6th Cir. 2020); *see also MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 413 (E.D. Mich. 2019) (same). "The underlying requirements that rental properties possess certificates of compliance

---

[2] At one point in his Complaint, Boniecki asserts that Warren has never established that the properties are rentals. (ECF No. 1 at Pg ID 2.) However, Boniecki does not allege that they are not and, in fact, many of his claims are based on his assertion that they are and that Warren's actions deprive him of the right to receive rental income and tenants of the right to live in the property. (*See generally id.*)

15

and failure to do so may result in a blight violation are lawful, as is the requirement that landlords demonstrate compliance before being allowed to rent the property to tenants." *Halpern, 2012*, 404 F. Supp. 3d at 1119; *MS Rentals*, 362 F. Supp. 3d at 413.

Boniecki's equal protection claim is premised on his assertion that, because of these requirements, Warren treats rental properties differently than non-rental properties. (ECF No. 1 at Pg ID 7-8.) To plausibly plead an equal protection violation, Boniecki must allege "that the government treated [the properties at issue] disparately as compared to similarly situated [properties] and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Courser v. Allard*, 969 F.3d 604, 617 (6th Cir. 2020) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). Boniecki does not allege that he is a member of a suspect class or that Warren's actions burdened his fundamental rights.

He therefore asserts a "class of one" equal protection claim. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted). To make out such a claim, Boniecki must plausibly allege that the properties were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. Rental properties are not similarly situated to

16

non-rental properties, however. Additionally, Warren undoubtedly has a rational basis for requiring licenses for rental properties—that being, ensuring safe and habitable dwellings for the tenants within its borders.

## Summary

For these reasons, the Court is of the opinion that Boniecki's Complaint is subject to dismissal for failure to state a claim upon which relief may be granted. Warren does not make this showing in its motions. Therefore, as previously indicated, Warren's motions to dismiss (ECF Nos. 9, 28) are **DENIED**. As Boniecki is not likely to prevail on the merits of his claims, his motions for injunctive relief (ECF Nos. 7, 24) also are **DENIED**. *See Gonzales v. Nat'l Bd. Of Med. Exam'rs*, 223 F.3d 620, 625 (6th Cir. 2000) (explaining that "a finding that there is simply no likelihood of success on the merits is usually fatal [to a motion seeking a preliminary injunction]"). It is unnecessary, at least at this juncture, for Warren to obtain the discovery sought in its other pending motions (ECF Nos. 25, 26), and thus those motions are **DENIED WITHOUT PREJUDICE**.

Before the Court may sua sponte dismiss Boniecki's Complaint, however, it must provide him with an opportunity to respond or amend the complaint. *Tingler, supra*. Therefore, within twenty-one (21) days of this Opinion and Order, Bonieki shall **SHOW CAUSE** in writing why his Complaint should not be dismissed with

17

prejudice for the reasons set forth herein. If Boniecki believes he can cure the deficiencies discussed in this decision by filing an amended complaint, he should explain in the filing what those amendments would be.

    **SO ORDERED**.

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: February 21, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, February 21, 2023, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan<br>
Case Manager